IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| T.P.R., by and though his parent, ) | |
| DONNA PATTERSON-RUDOLPH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  2:08cv813-WKW |
| ) | (WO) |
| MONTGOMERY PUBLIC SCHOOLS, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On October 6, 2008, Donna Patterson-Rudolph filed a complaint *pro se* on behalf of her son, T.P.R., asserting that the Montgomery Public Schools and several of its employees failed to comply with their obligations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400 *et seq.*, failed to follow the school system's own policies and regulations, and violated the Due Process Clause.  (Doc. No. 1.)  The plaintiff names Montgomery Public Schools; Lewis Washington, principal of Sidney Lanier High School; Inez Everage, assistant principal of Sidney Lanier High School; Lois Johnson, PALS Officer; Paula LaCoste, Educational Specialist; Linda Robinson, Chief Academic Officer; Deborah Thomas, Director of Curriculum and Instruction; John Dilworth, Superintendent;  and Raymond Price, a school bus driver, as defendants.  On November 7, 2008, the defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  (Doc. No. 8.)  On November 10, 2008, this court ordered the plaintiff to show case why her claims filed on behalf of T.P.R.

should not be dismissed. (Doc. No. 9.) The plaintiff filed a response to this court's order on November 25, 2008. (Doc. No. 10.) Oral argument on the defendants' motion to dismiss was conducted in this court on January 6, 2009. (Doc. No. 14.)

Now pending before the court is the defendants' motion to dismiss. (Doc. No. 8.) The court has reviewed the defendants' motion and concludes that the motion to dismiss should be denied with respect to the plaintiff's claim that the defendants in their individual capacities violated the Due Process Clause by failing to provide adequate notice and other procedures prior to T.P.R.'s suspension and withdrawal from school and granted with respect to the remaining claims.

## II. STANDARD OF REVIEW

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheuer v. Krause*, 416 U.S. 232 (1974). In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007), "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

should not be dismissed. (Doc. No. 9.) The plaintiff filed a response to this court's order on November 25, 2008. (Doc. No. 10.) Oral argument on the defendants' motion to dismiss was conducted in this court on January 6, 2009. (Doc. No. 14.)

Now pending before the court is the defendants' motion to dismiss. (Doc. No. 8.) The court has reviewed the defendants' motion and concludes that the motion to dismiss should be denied with respect to the plaintiff's claim that the defendants in their individual capacities violated the Due Process Clause by failing to provide adequate notice and other procedures prior to T.P.R.'s suspension and withdrawal from school and granted with respect to the remaining claims.

## II. STANDARD OF REVIEW

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheuer v. Krause*, 416 U.S. 232 (1974). In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007), "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

### III.  DISCUSSION

In reviewing the plaintiff's complaint, the court applies "the liberal construction to which *pro se* pleadings are entitled." *Holsomback v. White,* 133 F.3d 1382, 1386 (11th Cir. 1998).  In her complaint, the plaintiff asserts that the defendants failed to comply with their obligations under the IDEA, as well as their own policies and state requirements, when they expelled T.P.R. and subsequently withdrew him from the school system.  She also alleges that the defendants did not provide notice of her son's suspension and withdrawal from the school system.

### A.  The Federal Claims against the Defendants in their Official Capacities

The plaintiff sues the Montgomery Public Schools, presumably for the actions of its individual employees.[1] To the extent the plaintiff sues the Montgomery County Board of Education and its employees in their official capacities, the defendants are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  *See also Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999); *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993); *Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents.")  The

---

[1] For purposes of this Recommendation, the court construes the plaintiff's claim against the "Montgomery Public Schools" as a claim against the Montgomery County Board of Education.

Alabama Supreme Court recently held that "county boards of education are agencies of the state [and] are clothed in constitutional immunity from suit." *Lee v. Hale County Bd. of Educ.*, No. 1071094, ___ So. 2d ___, 2009 WL 130085, *4 (Ala. Jan. 16, 2009).

"A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, this court concludes that the the Montgomery County Board of Education and the individual defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Thus, the defendants are entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against them in their official capacities.

### B.  The IDEA Claims

The defendants assert that the plaintiff can prove no set of facts in support of her IDEA claims. In her complaint, the plaintiff alleges that the defendants disciplined and

4

subsequently suspended her son without conducting an adequate investigation. Specifically, she asserts that no corrective action was taken to remove her son from an unsafe environment which caused him to suffer a loss of self-esteem and a lack of desire to attend school, as well as failing grades. She also alleges that, although T.P.R. is a minor, the defendants failed to contact her regarding his suspension.

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education employment, and independent living. . . ." 20 U.S.C. § 1400(d)(1)(A). Thus, state and local educational agencies which receive federal assistance are required to provide a disabled child "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 203 (1982). *See also CP v. Leon County School Bd.*, 483 F.3d 1151, 1152 (11th Cir. 2007). In her complaint, the plaintiff does not allege that T.P.R. suffers from a disability.[2] Thus, the plaintiff can prove no set of facts in support of her IDEA claims which would entitle her or her child to relief.

Moreover, the plaintiff has failed to allege facts demonstrating that she availed herself of the procedural safeguards through the school system before filing her IDEA claims in this court. The IDEA provides important procedural safeguards to parents and children. *See*

---

[2] When asked to clarify the facts in her complaint during oral argument, the plaintiff indicated that T.P.R. has neither been diagnosed by medical personnel or found by school officials to suffer from a disability.

5

*Leon County School Bd.*, 483 F.3d at 1153. Both parents and children have a right to present complaints regarding placement of a child and to initiate an impartial due process hearing. *Id.* (citing 20 U.S.C. § 1415(f)(1)). Parents also have a right to appeal the decision of the administrative hearing officer to a United States district court, where the district court judge will review the complaint *de novo* and may hear additional evidence if necessary. *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)). The plaintiff did not pursue her complaints against the defendants by requesting a hearing or availing herself of other procedural safeguards as required by the IDEA before filing her claims in this court.

Because the plaintiff has failed to allege facts demonstrating that T.P.R. is disabled under the IDEA and has not availed herself of procedural safeguards as required by the IDEA, this court concludes that the plaintiff has failed to state a claim upon which relief may be granted. Consequently, the defendants' motion to dismiss the IDEA claims pursuant to FED.R.CIV.P. 12(b)(6) should be granted.

### C. Due Process

The plaintiff's complaint is not a model of clarity. Thus, it is difficult for the court to discern the specific claims the plaintiff attempts to present in her complaint. The plaintiff asserts that, when T.P.R. received a three day suspension for his behavior on the school bus, "MPS upheld an incomplete office referral by refusing to complete pertinent information between student parent relationships" and that "there was no mention of [her] son's name on the complaint that was received from Raymond Price." (Doc. No. 1, p. 2.) She further

6

asserts that "[o]n May 20, 2008, Plaintiff was notified that student had been withdrawn from Sidney Lanier High School, without notification to either parent-confirmation of conversation was provide on said date." (*Id*., p. 3.)  Construing the plaintiff's argument liberally, the court treats the complaint as including a claim that the defendants violated due process by failing to follow local rules and regulations.  In addition, the court construes the plaintiff's contention that the defendants failed to provide notice of the initial suspension and subsequent withdrawal of T.P.R. from Sidney Lanier High School as a claim that the defendants violated the Due Process Clause of the United States Constitution.

### 1.    **Local Policies and Regulations**

To the extent the plaintiff asserts that the defendants violated her son's due process rights by failing to follow their own policies and the requirements of Montgomery County and/or the State of Alabama when expelling or allowing the withdrawal of T.P.R. from school, the court concludes that the plaintiff's claim is due to be dismissed.  *See Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525 (11th Cir. 1987) (a violation of a state statute outlining procedure does not necessarily equate to a due process violation);  *Smith v. Georgia,* 684 F.2d 729, 733 n. 6 (11th Cir. 1982) (court declines to follow a per se rule that every deviation from an agency's rule constitutes a constitutional violation).

### 2.    **The Suspension and Withdrawal from Sidney Lanier High School**

To the extent the plaintiff asserts that neither she nor T.P.R. received proper notice

and that T.P.R. was not given an opportunity to defend the charges against him with respect to his suspension and expulsion, the court concludes that the plaintiff has asserted a procedural due process violation.

### (a)   Temporary Suspension

The plaintiff contends that neither parent nor T.P.R. received proper notice of the charges concerning the bus incident. With respect to T.P.R.'s three-day suspension, the Court's decision in *Goss v. Lopez*, 419 U.S. 565 (1975), is applicable. In *Goss*, *supra*, the Court discussed the procedural due process standard for short-term school suspensions:

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

*Id.* at 581. Given the brief deprivation involved in a temporary suspension, a school need not "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 583.

The pleadings indicate that T.P.R. was suspended for approximately three days for his behavior on a school bus. The plaintiff alleges that T.P.R.'s name was not on the complaint provided by the bus driver, that T.P.R. was provided an "incomplete office referral," and that the defendants "refused to investigate." (Doc. No. 1, p. 2.)  Thus, the plaintiff's allegations

are sufficient to establish a procedural due process claim against the defendants. Therefore, the motion to dismiss with respect to this procedural due process claim against the defendants in their individual capacities should be denied.

### (b) Expulsion

The plaintiff asserts that T.P.R was "withdrawn" from Sidney Lanier High School on May 20, 2008, without receiving proper notice. During oral argument, the defendants asserted that T.P.R. voluntarily withdrew from school. The plaintiff, however, argued that T.P.R.'s withdrawal from school was not made voluntarily. Thus, the parties dispute whether a de facto expulsion occurred.

Longer suspensions or expulsions for the remainder of a school term, or permanently, require more formal procedures. *Goss*, 419 U.S. at 584. Therefore, a student facing expulsion is due a higher standard of due process than one facing temporary suspension. *L.Q.A. v. Eberhart*, 920 F.Supp. 1208, 1217 (M.D. Ala. 1996). Due process requires notice and some opportunity for a hearing before the expulsion of a public school student for misconduct. *Dixon v. Alabama State Board of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961). "[N]otice should contain a statement of the specific charges" and "[t]he nature of the hearing should vary depending upon the circumstances of the particular case." *Id.*

In this case, the plaintiff's allegation that T.P.R. was involuntarily withdrawn from school without receiving adequate notice is sufficient to establish a due process claim against the defendants. Consequently, the motion to dismiss this due process claim against the

9

defendants in their individual capacities should be denied.

### D.  Qualified Immunity

The defendants assert that the Montgomery Public School employees are entitled to qualified immunity because they were acting within the discretion of their authority when suspending and allowing the withdrawal of T.P.R. from school.  The doctrine of qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity ensures that only "the plainly incompetent or those who knowingly violate the law" are subjected to liability. *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir.2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. __, No. 07-751, at 6 (Jan. 21, 2009). "[Q]ualified immunity is a privilege that provides 'an immunity from suit rather than a mere defense to liability.'" *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)).  For this reason, the Supreme Court instructs courts to resolve "immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th

Cir.1998) (Noting it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible."). To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority. *Bates*, 518 F.3d at 1242. The burden then shifts to the plaintiff to overcome the defense of qualified immunity. *Id*.

Recently, the Supreme Court ruled that district or appellate courts are no longer bound to follow the "inflexible" two-part inquiry for qualified immunity that had been required by *Saucier v. Katz*, 533 U.S. at 201–02, 121 S. Ct. at 2156. *Pearson*, 555 U.S. __, No.07-751, at 1; *Id*. at 10 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Under *Saucier*, the court first asked a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201, 121 S. Ct. at 2156. If the answer to that question was affirmative, the next question was "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id*. The court may still apply the two-part inquiry from *Saucier* when that "order of decision making will best facilitate the fair and efficient disposition of [the] case." *Pearson*, 555 U.S. __, No. 07-751, at 17.

In *Pearson*, the Supreme Court said, "Our decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the

11

discretion to decide whether that procedure is worthwhile in particular cases." *Id*. There are still cases where it "is often beneficial" to answer the first inquiry from *Saucier*. *Id*. at 11. "[T]here are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong." *Id*. There are other instances when a discussion of whether a constitutional right has been violated would be, at best, fruitless and, at worst, harmful. *Id*. at 12–15. For instance, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Id*. at 13.

As previously discussed, the precise factual basis for the plaintiff's claims are difficult to identify in this case. The parties dispute whether T.P.R received due process prior to his suspension and withdrawal from Sidney Lanier High School. When considering the well-settled law regarding procedural due process, the court concludes that qualified immunity does not bar the plaintiff's's due process claim against the defendants in their individual capacities at this stage of the proceedings. Consequently, the defendants' motion to dismiss on the basis of qualified immunity should be denied at this time.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge as follows:

(1)   The defendants' motion to dismiss the plaintiff's IDEA claims should be GRANTED.  (Doc. No. 8.)

(2)   The defendants' motion to dismiss the claims against the Montgomery Public

        Schools and the individual defendants in their official capacities should be GRANTED.  (Doc. No. 8.)

(3)    To the extent the plaintiff asserts that the defendants violated the Due Process Clause by failing to follow their own regulations and state law, the defendants' motion to dismiss should be GRANTED.  (Doc. No. 8.)

(4)    To the extent the plaintiff asserts that the defendants violated the Due Process Clause by failing to provide adequate notice or give T.P.R. an opportunity to dispute the charges against him prior to his suspension and de facto expulsion, the defendants' motion to dismiss should be DENIED.  (Doc. No. 8.)

(5)    The claims that defendants Washington, Everage, Johnson, LaCoste, Robinson, Thomas, Dilworth, andPrice in their individual capacities violated the Due Process Clause by failing to provide adequate notice or give T.P.R. an opportunity to dispute the charges against him prior to his suspension and de facto expulsion shall proceed.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before April 15, 2009.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District

Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

     Done this 2nd day of April, 2009.

                                /s/Charles S. Coody
                        CHARLES S. COODY
                        UNITED STATES MAGISTRATE JUDGE